We will now take up case 0756142, Pum Wonderful LLC v. Purely Juice, Inc. Again, in case you weren't here, if you want some rebuttal time, you have to deal with that yourself and reserve it yourself. Mark Campbell for the appellate, Pum Wonderful. I would like to spend my time this morning discussing two issues, and the first issue is the one I think is most important to this appeal, and it has to do with whether the FDA regulations as written preempt a claim or prevent a claim under the Lanham Act. I think the case law is clear in terms of what the case law has dealt with in the past, but this is a unique situation. This is a situation where it's not the plaintiff seeking to use the FDA regulations as a sword, but instead it's a situation where a defendant is seeking to use the regulation as a shield. Judge Pritzker May I ask you, before you get into that, a preliminary question. This is an appeal from the denial of a preliminary injunction, and I notice that you filed your complaint and then waited two months before you applied for a preliminary injunction. That seems rather inconsistent with the notion that it's important that this advertising be stopped immediately. Why did you wait two months? Because normally in many of these cases what happens is the party files a complaint and simultaneously applies for a preliminary injunction. Your Honor, you may have seen from the record there was a lot of testing that was going on. The complaint was filed based on preliminary testing that was done. Further testing was conducted. Seven different laboratories were commissioned to analyze the juice of Purely Juice, and that took time. There wasn't a, based on what evidence we had at the time of the filing of the complaint, we felt that we needed to analyze it more. And so that's what the party, that's what Palm Wonderful did, is it went through and conducted this battery of tests through all of these different laboratories to ensure that the juice was continuing, that was being sold, was continuing to be adulterated. So you say the delay really resulted from the additional testing you conducted. Yes, Your Honor. Let me ask another question. The judge apparently indicated that she would set it for hearing on the merits shortly. Has she gone ahead and set a trial date? There is a trial date, Your Honor, in the beginning of April. In the beginning of April? Yes. The April trial date has been set. To get back to the point I was making, what we're dealing with here is a situation where a defendant, by simply showing that they complied with the federal regulation as to the BRIC standard, means that they can never be liable under the Lanham Act for false advertising. Let me give you an example as to why I think that result is absurd. Assume, for example, that I want to get into the business of selling farm fresh hens, and I look at the federal regulations, and the federal regulations tell me that in order to label my hens as farm fresh hens, all I need to show is that the weight is 5 to 10 pounds and that this particular poultry has feathers. So I decide to get into the business, and I realize that raising farm fresh hens is expensive. So I decide I can replace those hens with ducks, which are much, much cheaper. So as long as those ducks weigh between 5 and 10 pounds, and as long as those ducks have I can label them as farm fresh hens. Even though they walk like a duck and they quack like a duck, and every scientist in the world would tell you that these are ducks, I can label them as hens. And I submit to you that's precisely what happened in this case. Let me ask you this. You say that this issue has really never been addressed. And I think that's probably right. And you're entitled to a trial, and you're getting it in April. Why should we be really fussing with a preliminary injunction at this point? And that's a good point, Your Honor, and there's a few reasons. First of all, I think the record is clear, and I think the court acknowledged, the district court acknowledged that this was a unique case. This was a unique issue that hadn't been decided. Yes, so on preliminary injunction, we don't decide the merits of something like that. And I understand that. But the problem is we have an area of law that is undecided. And based on the court's decision at the time of the preliminary injunction, we are now limited in terms of what we can present at trial. This case has gone from a false advertising case based on scientific evidence showing that what the defendant was selling was adulterated pomegranate juice to a case merely about sugars and whether there was sugar in this product and whether this product should have been labeled as having sugar. So all of the issues dealing with whether there was adulteration and whether this was really 100 percent pure are now off the table. How is that? I'm not understanding that. Because the court made a determination that she could not consider any of the scientific evidence on the issue of 100 percent. Remember, we're dealing with 100 percent as one issue and sugar as another. And with respect to 100 percent, the judge said, I can't touch this. The FDA has said the minimum BRICS requirements is enough. The defendant has established that their pomegranate juice has 16 BRICS, and therefore I can't touch this. She didn't use the word preemption. That was all said in the context of a preliminary injunction. There's nothing to prevent you, as I understand it, from now coming back at the trial and asking the court to reconsider and explain in greater detail. Maybe she'll reject your claim. Maybe she won't. We don't know. But you're asking us to decide what seems to be a significant legal issue in an appeal from a preliminary injunction. And to overturn a denial of a preliminary injunction, we have to say that the district court abused its discretion in denying. And I take it your argument is that, yes, it abused its discretion because it made an erroneous ruling on this question under the Food and Drug Law. That's your basic argument. That is, Your Honor. But we think, to answer the earlier question, we think it's not only important to the eventual trial in this case, but it's important in terms of allowing the competitor, in this case purely juice, to continue on the market without any possibility of a false claim act because they're simply meeting the BRICS requirement. Well, but that's what the judges are trying to emphasize to you, Counselor,  And we cannot do anything unless we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion that it reached upon weighing the relevant factors. Now, clearly erroneous on a question of first review and us giving a preliminary injunction on that, in a preliminary injunction appeal, if we start making law in a preliminary injunction appeal without giving the court the opportunity to decide for itself a trial after further briefing and further argument and further idea, I mean, we all came in quickly in this thing, and the court had to make some determinations on a quick basis. And the court has worked quickly for you, given you a trial in April, and now you want us to start, well, we'll have all kinds of preliminary injunctions for us to make law before we have a chance to go to trial and the court to make those decisions. And if we're going to do this on abusive discretion, it seems to me that we don't meet the standard. Let the judge have the chance to have the trial, hear, make the law, do the record, give it her best shot, more cases come down as time goes on, and do what she has to do. And that's not the end of the problem. We have two different, if you will, ways to get this preliminary injunction. Two different standards of review. One says we can demonstrate either a likelihood of success on the merits and the possibility of irreparable injury or serious questions going to the merits were raised and the balance of hardship tips sharply in the moving party's favor. And the other analysis is that we have a general test, and it has four different things. Well, if I use the first test, this judge said, Okay, we have serious questions here. The likelihood of success here is where it is. But her biggest deal is, Hey, the balance of hardships doesn't tip in your favor, it tips in their favor, and therefore we shouldn't do preliminary injunction. So it seems to me that you get us in the point of saying, We haven't seen the evidence. We haven't seen anything. All we're doing is reading the record. Saying to her, You don't know a thing about what you're saying, based on this mere bunch of papers on our desk. We're so smart, we know you don't know, and therefore you can't do what you did. Now that's what you're asking us to do. Your Honor, I understand this is an uphill battle for us. I understand the posture we're at. But when you look at this record and you look at the case law that exists, although not on point, the case law clearly says that you can rely on scientific evidence outside of the FDA regulation to prove impurity. And this judge flatly rejected that. Flatly rejected that. She did not flatly. She said on preliminary injunction, That's one of the reasons I'm not sure that the case will ultimately go your way. Because the government says that. And you've got a chance to go back and argue to her about that. But, Your Honor, that's not what she said, with all due respect. What she said was that what Palm Wonderful was attempting to do through the scientific evidence was to establish a standard that the FDA had not promulgated. But that wasn't what we were attempting to do. We were taking that standard and setting it aside and saying the BRICS is the FDA regulation, which we understand, but there is this huge body of scientific evidence, including evidence from Purely Juice, that firmly established that this juice was adulterated. And based on her misinterpretation of the law, she refused to consider that evidence. And that's why we believe this is an issue for a preliminary injunction. Kennedy. Well, did she refuse to consider it? Or did she say, in the context of a preliminary injunction, in determining what is the likelihood of success, I don't think that evidence carries much weight. I mean, you know, you say she refused to consider it, but frequently courts don't always discuss things, but that doesn't mean they didn't consider them. Well, you know, if we were to grant you a preliminary injunction, that's all we would do is send it back. We wouldn't decide that issue. Understood. But in granting a preliminary injunction, what you would be granting is based on the law without the erroneous determination. But even if she were to grant a preliminary injunction, when it came to the merits, she could go the other way, couldn't she? Ultimately, she could go the other way, but at least it would be based on a correct interpretation of the law. A preliminary injunction is not dispositive on any issue. Just what it says is, has there been a sufficient showing of likelihood of success in injury, et cetera, that the situation should be changed, should be stopped? That's right. And, but the problem we continue to face is her findings. In this, and I don't want to repeat myself, but her findings with respect to the scientific evidence and the weight to be given to that. And she made it clear that it's to be given zero weight. She cannot consider the scientific evidence. And that's where we believe the error is. But, counsel, I don't think we would make that decision at this point. Even if we granted you a preliminary injunction, we'd just say, oh, we think there's enough merit to your case, and you're the one who's suffering the hardship. That's all we would say if we were to grant it for you. I understand that, Your Honor. But the merits of the case would be based on the correct interpretation of the law. It would be based on interpretation of the law that this Court refused to give. Which she might change. She might change her interpretation. If it's based on her interpretation of the law, she might change. You might be able to convince her to change it when you went back on the merits. That's possible, isn't it? I guess, Your Honor, anything is possible. But based on the record. But it's not just anything is possible, because I've seen enough cases where there's a preliminary ruling, and then that's upheld, and then it goes back on the merits. And on the merits, the trial judge reverses its earlier ruling and says, well, that's what I thought when I considered the preliminary injunction. But upon further consideration and study, I've concluded that I was wrong, and therefore I'm now going to come out the other way. I don't say it happens all the time, but it's not unheard of. It happens with some degree of frequency, I think. You see it all the time in the Federal Circuit in patent cases in which the court makes a preliminary interpretation of what the claims mean, and on the basis of that denies a preliminary injunction. And they appeal, of course, and we affirm it. And then it goes back, and then on reconsideration, the court says, well, I've considered it further, and I now think that I misinterpreted the patent initially. I do understand that, Your Honor. In addition to the law, though, is what we're dealing with is we're in a competitive market where all competitors are selling pomegranate juice based on studies and findings of the healthful benefits and qualities of those pomegranates. So in the meantime, by allowing the court to apply what we believe is a misinterpretation of the law and clear error, we continue to allow competitors to enter this market believing that simply by showing BRICS that they can call grape juice pomegranate juice, they can call cherry juice apple juice, because they've met the minimum BRICS requirements. And that's why this injunction is important. You're talking about the public interest now, aren't you? We are, and that's something that was obviously in our briefs as well. But isn't there another facet of the public interest? In addition to the importance of protecting the public against misrepresentations and selling products, there's also, I assume, some public interest in members of the public having an alternative, cheaper source of supply to which they can turn. I gather that your competitor is charging less for its juice than you do. So long as that cheaper alternative is what it says it is. So long as that cheaper alternative is 100 percent pomegranate juice. So long as that cheaper alternative doesn't have added sugars, that's absolutely right. But that's not what the public was getting here. But the bottom line for me is that under the preliminary injunction standard of review, the first one, I have two alternative standards, the likelihood of success on the merits and the possibility of irreparable injury, or that there are serious questions going to the merits, which you are raising, but the balance of hardship tips sharply in the moving party's favor, and here the judge did not find that. The judge found that the balance of hardship tips sharply in the non-moving party's favor. And I have only evidence in the record, and now I'm to suggest, on her abuse of discretion standard, that the good judge missed, based on what evidence is in this record, so bad what the evidence states, that it's an abuse of her discretion saying that it doesn't tip in your favor, but it tips in the other favor. Now, frankly, that isn't in this record. There's substantial evidence to sustain what she said about the balance of hardships in this record. And unless I totally throw it out based on absolutely no reason, then I can't get there because the standard of review doesn't get there. Even if I go along with you on the serious questions, the balance of hardship is not there. Your Honor, the balance of hardship determination was made after a determination that the judge essentially had to throw out the scientific evidence, and the balance of hardship determination was made after the court erroneously found that there was, quote, conflicting evidence on the issue of sugars. All of that, in letters conclude, that based on the- What made you think it was done after? Just simply because it's after in the judgment it's being made? I think you can read that in the order that that's what happened. Well, you know, in my book, if she's following our standard of review, she's got to make two determinations. And if I looked at the standard of review and I saw what they said, it would seem to me I'd discuss the serious questions first and the balance of hardship second. But that doesn't mean that it's made after or that it's made on continuation of. It just means I've got to make another determination about that. And again, counsel, how can I get rid of the evidence that's in this record? Substantial. Now, that doesn't mean the preponderance. That doesn't mean beyond a reasonable doubt. That just means something that the judge can seize on that is good evidence. And that's what she did. She seized on it. I mean, that's my worry. And I understand that. I want to reserve time. I'm getting down to my last minute. But the judge seized on evidence of substantial hardship because she believed they'd have to pull their product off the shelf completely or to be onerous to relabel or that testing was improbable or implausible. But all of those things were in the record. The defendant admitted they had initiated a testing program. There was no reason that they couldn't regularly test. And if they were having product on the shelf that was adulterated, they should pull it off. And that was in the record. And that showed that the hardships weren't, as the court weighed them here, against Palm Wonderful and in favor of Purely Juice. And, again, I believe reading the order you can see where she took the step of denying the merits portion of the argument and going into the balancing of hardships under that assumption that all that scientific evidence was irrelevant to the ultimate decision. If I may reserve the last 48 seconds, I would. If you may. Thank you. Good morning, Your Honors, and may it please the Court. My sister once came crying to my mom. What's your name again? Steven Abraham on behalf of the respondents. Thank you. My sister once came crying to my mom saying Dad wouldn't give her $5 for the movies. Mom astutely asked, well, what did you ask for? And she said $20, the keys to the car, and to stay out late. Sometimes it's important to know the questions that are asked before you get to the answers. It's interesting that in the briefs that were submitted, including the appendix by the appellant, there was little regard nor even mention of what they had asked for. I think that was an important point that they might have perhaps inadvertently overlooked. But if, in looking at the proposed order, there was any mistake about what they wanted, and as counsel suggested, that there could have just been testing, changing of labels, I think that notion was dispelled by the request that purely juice be ordered to immediately remove from the marketplace, from the market, all product, advertisements, promotional materials, or representations relating to the claim that its product contains 100 percent pomegranate juice. And it goes on. Well, I think the judge very clearly understood that what was being asked for was the death sentence. Now, for counsel to come here today. Well, I don't know how much that helps you, because the judge was perfectly free, if the judge decided to grant a preliminary injunction, to say, yes, I will enjoin you from putting certain things on your label and advertising certain things, but I'm not going to order that all of your product be removed from the shelves. You're absolutely correct, Your Honor. What she could have done is said, I'm going to enjoin unlawful activity. Well, but what you seem to be saying is that because they asked for all of this in their request for a preliminary injunction, therefore that determines what would or would not have happened if you had lost, and that doesn't necessarily follow. That's correct, Your Honor, as to the latter point. Certainly the judge would not have been bound by that request in her evaluation of the claims and her consideration both of the evidence and the arguments. Nor, and his point is, nor in fashioning the injunction preliminarily to do. Absolutely. Even though asked. That's his question. That's why your argument didn't seem exactly appropriate. Because she had free reign to fashion that preliminary injunction any way she thought reasonable to do. Correct, Your Honor. Regardless of what they asked for. Regardless of what they asked for, everything that was presented to her in her court created context for what ultimately she might give to them. And in that regard, there are a number of points that they've raised both today and in their briefs and, quite frankly, in the court below that I think deserve a few comments. Well, she might also have, apart from removing stuff from the shelves, she might also have given a much more limited remedy than they suggested with respect to what you could advertise or what you could say on your labels. We don't, as my colleague has said, she has complete discretion to decide what a preliminary injunction will say. Correct, Your Honor. She had complete discretion and, as we are concerned, as we look here today, observed that she did not abuse that discretion. And by that I mean very specifically. Well, that's a different argument than you've been making. Well, but again, it comes together. The point is that she was in the best position to hear evidence, hear evidence that might be used at trial, might not be used at trial. Essentially, it was their best shot at showing her preliminarily that there was something that needed to be enjoined. So the first question is, what is the thing that you are seeking to enjoin? Whether it's still happening or not, we'll pass on for the moment. And they said it was the selling or advertising of a product that didn't meet certain standards. So she asks, okay, what are those standards? And immediately they pull out science. That's important to know. She didn't reject the science. She didn't tell them they couldn't use it at trial. But she said, wait a minute, counsel, you're asking for me to look at indicators of authenticity. Okay, I get that. But you're also asking me to accept, as a matter of law, some new tests, not tests for the indicators of authenticity. But, again, it seems to me there's no doubt what they wanted to enjoin. They wanted to enjoin you from saying two things, a hundred percent truth and or no sugar added. Those are the two things they were objecting to, weren't they? Not quite, Your Honor. They were objecting to those in the context of what they alleged were violations that they believed they could establish back in February of 2007. That's the question, the basic, ultimate question in this case, I take it, on the merits, is whether or not you had misrepresented your product when you said, one, a hundred percent truth, and two, no sugar added. Those are the ultimate questions. Ultimately, the ultimate questions, I'll grant you, as to actually one of the three causes of action. Two of them also have intent elements in there. But you're right. Ultimately, the question would be, was there a product that was not as it was represented? Did it rise to a level of significance? Was there intent with respect to it? And what should be the penalty or remedy? That is the important part. We could liken this to an instance where somebody opens up a 12-ounce can of Coke or Pepsi, discovers it only has 11 1⁄2 ounces in it. Says, well, wait a minute, that's clearly a misrepresentation. It's fairly significant to me, because that represents a 1⁄24th premium on what I purchased. That's not the question of the case. I still come back to it, it seems to me, however you dress it up, the ultimate question on the merits is whether you misrepresented your product in two ways, one saying it was 100 percent pure pomegranate juice, the other that no sugar had been added. Absolutely. Certainly, as to the merits, come trial in April, those will be the questions at the forefront. And ultimately, to those who are added. Has discovery been completed in this case? I'm sorry, Your Honor? Has discovery been completed? With the exception of experts. We have a deposition. We've begun exchanging the lists of documents, the witness lists, except for rebuttal material. It's all been disclosed. And we have a conference coming up, the conference in 21 days. Actually, the external proceeding, the final conference that we'll have. Your answer is discovery, as far as you can tell, has been substantially completed. Substantially completed, correct, Your Honor. There are a few points left. But very important to note as to that discovery. The judge has not once in this case said, you may not use. She has not once in this case said, you may not discover. As a matter of fact, the judge has offered no opinions, nor even been asked to render an opinion on whether or not something can be legitimately the subject of discovery efforts. So in that regard, for the appellant to stand here and represent in its briefs that the judge has already precluded it from using scientific evidence, in fact, finds no basis either in her opinions or in any activity in this case. They may be free to present to the court what they believe is a valid scientific basis for establishing, by another means, a failure to comply with the FDA standard. But what the judge very clearly said is, if what you are trying to do is describe elements that are not included in the FDA's authenticity markers, I'm not going to agree, for purposes of a preliminary injunction, that that is the standard that I will apply. She's acting as a gatekeeper for a preliminary injunction. She has engaged in no gatekeeper functions for trial to this point. Will a jury be able to decide what standard to use, the FDA standard or the scientific standard, or is she going to make that decision? My understanding at this point is that it's not a jury trial. But in addressing the question directly, the question will be, in what role will she act as a gatekeeper? That will be even more to your favor then, because she can make that determination and allow in all the evidence and know where she needs to go. It is ordinarily a custom, of which I understand to be applied almost universally, that the judge says, as I've been so often told, I'll let it in and decide later which parts stay in. Yes, Your Honor. So there's very little prejudice to compliance. That's why I wanted to ask the question. Yes, Your Honor. And once she makes that determination, its validity, of course, can be determined in an appeal from her final judgment. Absolutely, Your Honor. And certainly even before she makes that decision, in a greater opportunity than is ordinarily provided for a preliminary injunction, they'll have the opportunity to argue, to present witnesses, to go through it, whether it's a Daubert or a Kelly-Fry test, to go through the very standard 400, 500, and 700 series of evidence rules, tests on whether or not it should be allowed in. She'll act as a gatekeeper deciding what she will hear. As you point out, as is rightly understood, she'll probably say, I'll let it all in and then consider the extent to which I give it weight. And to the extent either party is agreed by what ultimately is the decision, then after trial and a decision on the merits, they may wish to test the validity of a reasoning. But as you say, in a snapshot, when early on you ask for the death penalty, the Howard issue less, it seems fairly untoward to come to this, before this court, saying, she got it all wrong, it should go the other way, notwithstanding the fact that there will be an opportunity in two months to hear the evidence and rule on the merits. Let me ask you a question, which is the most worrisome to me. We go through all of this, and I hear your argument, and I can come down where I may even come down where you want me to be. But then, for you to suggest that what they're doing on appeal is frivolous, and so lacking in merits as to justify an award of fees and costs seems absolutely out of where you are. I mean, you can argue that the question is such that this is the way it is. The question is such that this would be more discretion. You've got to give the judge discretion. But to suggest that, if you've got to give the judge discretion, then appealing it, that it is so frivolous, so lacking in merits, as to justify an award of fees and costs, because they would appeal, seems outside of the normal argument. Ordinarily, you're right, Your Honor, it is. And certainly, I would have been well taken, I suppose, to occasion, during the time that you repeated that, to rethink what I asked for. But in looking back at it, I think there were substantial reasons for it. And they come down to one thing that the Court had noted earlier. You're telling us you think this is a frivolous appeal? Let me explain why, Your Honor, why I felt it at the time and why I feel certainly. You're the one who argued that this was a legal issue of first impression. You're the one that argued that the evidence in the record before us and the legal arguments presented make it such that you cannot suggest this is an abuse of discretion. And now you want me to say that because they want to bring an appeal, that it is frivolous. If I may explain why, Your Honors, this Court has, in all the cases that we've heard this morning, said that one of the foremost issues to be addressed as you review the cases are the standard on appeal. Not how the case gets here, but how you are empowered to do something about it. You proposed, or rather, you indicated the two tests that are used that this Court has held over a continuum, never describing precisely the end points, but understanding that they rep a balancing of issues. And most notable, I think, in your discussion of the standard of reviews was the fact that there was absolutely no evidence, no evidence in the record that they had suffered any harm, that they would suffer any harm by the denial of a preliminary injunction. No evidence whatsoever. So now, not only are you asked to review this case and determine whether or not there is any evidence in this record that they would suffer any harm, but just so you make sure, no one ever said from this bench that there is no evidence in this record they would suffer no harm. All we said was that the judge found that the balance of hardship tipped sharply in the non-moving party's favor, not the party's favor. Correct, Your Honor. And in examining the record, remember, all this Court has before it is the record and the guidance provided by its own understanding of the law and how it reads that record before it, there was no evidence of harm, other than a generalized statement, an argument. Well, if you're right that this is a frivolous appeal, I don't understand why we should be hearing our oral argument. If it's so clearly frivolous, we should have summarily affirmed this without even oral argument. Yet the oral argument today didn't convince me that there's absolutely nothing to be said. I mean, I don't know. I suppose bar associations may discipline attorneys and courts may discipline attorneys for filing frivolous appeals. That's a violation of the attorney's obligation. It's a serious charge to make. I don't think saying that the other side's appeal is frivolous is just another litigation point. I think it's making a serious charge against your opponents. It's a charge that one doesn't make lightly. And it's certainly not one that I make lightly. There were a number of factors that went into the setting forth of that statement. Talking about no evidence, you made the assertion that you might have to go out of business. Now, what kind of evidence did you put in for that? What was put into the record was the amount of money that had already been spent pulling what was essentially two weeks' worth of production. Bear in mind that this company was created about four months into 2006, operated in 2007 through 2008 to the present. Production runs don't run continuously. They run in response to supply needs. On the basis of the testing of six bottles or six labs, although sometimes that number became seven, on the basis of one production run, the company held what was between $800,000 and $1.2 million worth of stock, whether valued at cost or at what would have been the retail value of that product. The argument that had been made extended not on its own, merely the claim that the company would go out of business, but was based on the president of the company's own assessment, based on what it had cost him just to pull two weeks' worth of production, in essence, to withdraw that from the market. Remember that the president had asserted, and there was no evidence to the contrary, that he, the company, had not done anything, but in fact, out of an abundance of caution, they bore what were the economic consequences of pulling two weeks' worth of production, one month's worth of production in a production cycle. Now what was being asked was for them to pull everything, pull everything off the shelf that they have, test it, we don't know the extent to which it would be tested, presumably opening up every bottle, then validating all of the existing stocks of materials beyond the tests that had already been done and the tests that they had done since March and April of 2007. Remember now, at the time of the injunction, although they'd taken corrective measures, the plaintiff is demanding that they do something more. They essentially pull everything out of the market. Small companies simply can't do that. And what the judge, I think, astutely understood is that gives to a large company an incredible weapon, nearly the colorable claim of misrepresentation, coupled with an injunction that requires a cessation of activities for no matter how long, combined with a removal from the marketplace of all your product, represents not only an insurmountable hurdle to continued operations, but as was the statement of the president of the company, a death blow. The judge was entitled certainly to consider that in weighing the respective hardships. There was no evidence to the contrary. No evidence that Purely Juice would not suffer to that degree as a result of the activities. They had months to prepare for this preliminary injunction. There were no new tests regarding then-current product. No tests offered regarding what was, at the time of the hearing, the state of the product. No assertion based on evidence that could have been presented to the trier of fact that Purely Juice was at that time doing anything wrong. Quite frankly, as we raised in our brief, a real argument that perhaps might have been addressed by the court was one of mootness and with it the question of jurisdiction, at least certainly as to the request for injunctive relief. If nothing bad was being done, nothing to be enjoined, then in standing here today, I think a valid question is, in the absence of harms to the plaintiff, real tangible harms, in the absence of an argument against what would have been the death blow to the company, in the absence of any evidence that the product that on the day, the month, the week, the quarter that they even sought their injunction did not conform to laws, how can they now stand here today and say, the judge, the trier of fact, in the context of an injunction, got everything wrong? That's the only question I sought to raise by the comments that I offered. And to the extent they represented anything more than an argument made in the context of what very clearly is a fight between competitors, for that I apologize. Thank you. I want to raise one point in the very brief time I have, and it has to do with the balance of hardships. The court weighed the evidence and looked at the balance of hardships, and then the court asked whether they could adjust and tailor the injunction in order to address the hardships that had been presented. But because of the judge's erroneous view on the law as it related to the FDA regulations, she determined she could not tailor the injunction. Specifically in her order, she says, it appears that there is no advertising that can be properly enjoined without creating a potential conflict with the FDA regulations. And that's the point we were attempting to make in our briefs, that she had an opportunity and could have narrowly tailored the injunction, not to ask the products be recalled, not to ask all the products never be sold again, but to simply state that the products should be sold in a truthful manner and decided she could not do that because of the FDA regulations. Thank you. Thank you. Case 0756142, Pum Wonderful v. Purely Juicy, is now submitted.
judges: Fletcher, Smith, Friedman